# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs September 11, 2012

## STATE OF TENNESSEE v. JOSEPH DARRYL TAYLOR

**Appeal from the Circuit Court for Bedford County**
**No. 17148     Robert Crigler, Judge**

---

**No. M2011-02754-CCA-R3-CD - Filed October 31, 2012**

---

A Bedford County Circuit Court jury convicted the defendant, Joseph Darryl Taylor, of two counts of rape, *see* T.C.A. § 39-13-503(a)(1), (2); one count of contributing to the delinquency of a minor, *see id*. § 37-1-156; and one count of simple possession of marijuana, *see id*. § 39-17-418(a). At sentencing, the trial court merged the rape convictions into a single judgment of conviction and imposed an effective sentence of 20 years plus 11 months and 29 days' incarceration for the offenses. On appeal, the defendant challenges the sufficiency of the evidence to support his convictions, the trial court's allowing his impeachment by prior convictions of aggravated assault and statutory rape, and the trial court's sentencing determination. Discerning no reversible error, we affirm the judgments of the trial court.

## Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

Donna Orr Hargrove, District Public Defender; and Andrew Jackson Dearing, Assistant Public Defender, for the appellant, Joseph Darryl Taylor.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; Charles Crawford, District Attorney General; and Michael Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The 14-year-old victim, T.V.,[1] testified that he was 13 years old in September 2010 when he first met the defendant through his neighbors, Correy and Pattie George. Prior to the offenses, the victim had spent time "hanging out" at the George home on three or four occasions while the defendant was also there. The victim said that he and his older brother, S.S., spent time at the George home smoking marijuana. He recalled, however, that he did not smoke marijuana with the defendant while at the George home. Likewise, he testified that he had talked to the defendant "very little" and knew him only as "Darryl" at the time of the offenses.

T.V. recalled that his grandparents had gone to church on September 12, 2010, leaving him at home alone. Some time in the afternoon, Ms. George came over to the house to tell the victim that the defendant "wanted [him] to come over" to his residence at a nearby motel. Having visited the defendant once before with his brother, the victim rode his skateboard to the defendant's motel room at approximately 4:00 p.m. When the victim arrived, the defendant let him in and asked the victim to bring his skateboard inside and lock the door. The defendant procured a marijuana "joint" from a red, heart-shaped box, offered to share it with the victim, and the two smoked the marijuana cigarette while watching a football game. At some point, the defendant saw the victim's brother approaching the motel room door, told the victim not to say anything, and went outside to speak to the victim'sbrother. Not knowing that the victim was inside the motel room, the victim's brother soon left.

T.V. testified that the defendant was sitting on the bed and asked the victim to sit at the foot of the bed. The defendant disclosed to the victim that he was bisexual and offered the victim a marijuana cigarette in exchange for the victim's masturbating the defendant. When the victim refused the defendant's offer and attempted to stand up to leave, the defendant threatened to hit the victim. The victim testified that he then sat down on the bed because he was afraid. The defendant pulled down the victim's shorts and "raped [the victim] with his mouth." T.V. testified that he did not want the defendant to place his mouth on his penis. He said that he struggled with the defendant, but the defendant pinned the victim with his arms and legs. T.V. said that he told the defendant to stop. The victim testified that he did not ejaculate during the assault.

After placing his mouth on the victim's penis, the defendant stood and began taking his own pants off. At that time, the victim pulled up his pants and once again tried to stand up. He said that the defendant "grabbed [him] by the throat and slammed [him] on the

---

[1] As is the policy of this court, we will refer to the child victim in this case by his initials.

-2-

bed." T.V. recalled the defendant's saying, "Cut the bullshit." Nevertheless, after some struggling, the victim freed himself, grabbed his skateboard, and ran from the defendant's motel room. The victim saw a motel manager outside in the parking lot and told the manager that the defendant had raped him. The victim testified that the manager told him to leave.

T.V. testified that he ran home, where his sister noticed scratches and bruises on his neck. When she asked what had happened, the victim reported the offenses to his sister and grandparents. His grandfather telephoned the Shelbyville Police Department. Within hours of the offenses, the victim spoke to investigators and underwent a rape kit examination at the local hospital.

On cross-examination, the victim admitted that he was "high" while at the defendant's motel room. He explained, however, that he sobered quickly once the assault began because he was so scared.

Shashikant Patel, a friend of the motel manager, testified that on September 12, 2010, he saw a "white boy" with a skateboard "running out" of a motel room. He recalled that the boy "said something, but [he did]n't understand." Mr. Patel testified that the boy seemed scared.

Cathy Shaver, the victim's grandmother, testified that her family knew the defendant as a friend of their neighbor. She said that on September 12, 2010, she and her husband returned home at approximately 7:00 p.m. after going to church and visiting friends for the afternoon. When they returned home, neither the victim nor his older brother was at home. Ms. Shaver said she went to the George home to see if the victim was there, and Ms. George told her that the victim may be at the defendant's motel room-apartment. Soon thereafter, the victim arrived home with "a big old scratch on his neck [that] was bright red." Ms. Shaver said that the scratch had not been there earlier and looked fresh. When the victim told the family what had happened, he began "shaking." Ms. Shaver's husband telephoned the police and took the victim to the emergency room.

Ms. Shaver testified that since the assault, the victim had suffered from nightmares and had difficulty sleeping in the room alone. She said that she often slept in the same room with the victim because the victim "always want[ed] somebody around."

Shelbyville Police Department (SPD) Officer Jerry Draine responded to the report of the victim's assault. When he arrived at the Shaver home to interview the victim, he observed bruises and scratches on the victim's neck and chest that were consistent with the victim's account of the assault. Officer Draine recalled that the victim "seemed very scared" and that his grandparents "were very upset." The victim identified the defendant by

the name "Darryl" and told Officer Draine the address of the defendant's motel room. Detectives Charles Merlo and Brian Crews took over the investigation of the assault, but Officer Draine assisted in arresting the defendant at the motel later that night.

SPD Detective Charles Merlo testified that he observed the victim's injuries and opined that they looked recent. He also observed a "fresh" scratch on the defendant's right elbow when the defendant was arrested on the evening of September 12. Consistently with victim's account, investigators discovered a red heart-shaped box underneath the defendant's television stand. They also discovered a marijuana "roach," or cigarette remnant, on the night stand of the room. Although the victim submitted to an examination at the emergency room, no forensic evidence was recovered from the examination. Detective Merlo explained that a rape kit examination would not likely yield any evidence given the type of assault reported by the victim.

With this evidence, the State rested its case. The trial court then ruled that the defendant could be impeached with prior convictions of aggravated assault and statutory rape should he choose to testify. Following a full *Momon* colloquy, *see Momon v. State*, 18 S.W.3d 159, 161-62 (Tenn. 1999), the defendant elected not to testify and did not present any proof. The jury convicted the defendant, as charged, with two alternative counts of rape, one count of contributing to the delinquency of a minor, and one count of simple possession of marijuana. At sentencing, the trial court merged the alternative rape convictions into a single judgment and imposed the maximum Range II sentence of 20 years' incarceration for the rape conviction. The trial court also imposed sentences of 11 months and 29 days for the convictions of contributing to the delinquency of a minor and simple possession and ordered the sentence for simple possession to be served consecutively to the 20-year sentence for rape, resulting in a total effective sentence of 20 years plus 11 months and 29 days' incarceration. On appeal, the defendant challenges the sufficiency of the evidence to support his convictions, the trial court's allowing impeachment via his convictions of aggravated assault and statutory rape, and the trial court's imposition of sentence. We will review each claim in turn.

*Sufficiency of the Evidence*

We review the defendant's claim of insufficient evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379

(Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id*. Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id*.

Rape, as relevant to the counts alleged in this case, is defined by our Code as the "unlawful sexual penetration of a victim by the defendant or of the defendant by a victim [when] . . . (1) [f]orce or coercion is used to accomplish the act[, or] (2) [t]he sexual penetration is accomplished without the consent of the victim and the defendant knows or has reason to know at the time of the penetration that the victim did not consent." T.C.A. § 35-13-503(a)(1), (2).

"Any adult who contributes to or encourages the delinquency or unruly behavior of a child, whether by aiding or abetting or encouraging the child in the commission of an act of delinquency or unruly conduct . . . commits a Class A misdemeanor, triable in circuit or criminal court." *Id*. § 37-1-156. "'Delinquent act' means an act designated a crime under the law . . . ." *Id*. § 37-1-102(b)(9).

"It is an offense for a person to knowingly possess or casually exchange a controlled substance . . . ." *Id*. § 39-17-418(a).

Initially, we note that the defendant erroneously contends that the evidence presented in this case "is highly circumstantial" and that "[i]n order to convict on circumstantial evidence alone, the facts and circumstances must be so closely interwoven and connected that the finger of guilt is pointed unerringly at the defendant." In *Dorantes*, our supreme court clarified the standard to be utilized when examining circumstantial evidence and held "that direct and circumstantial evidence should be treated as the same when weighing sufficiency of such evidence." *Dorantes*, 331 S.W.3d at 381 (citations omitted) (also noting that "[c]ircumstantial evidence . . . is intrinsically no different from testimonial evidence"). Therefore, even assuming the evidence in this case consisted entirely of circumstantial evidence, the evidence would not be held to a different level of scrutiny as espoused by the defendant. At any rate, the victim's testimony about the offenses was direct evidence of the same. *See, e.g.*, *State v. Michael Aaron Jenkins and Perley Winkler, Jr.*, No. E2008-02321-CCA-R3-CD (Tenn. Crim. App., Knoxville, Feb. 17, 2011) (noting that "eyewitness testimony is direct evidence"), *perm. app. denied* (Tenn. May 25, 2011); *State*

*v. Larry Wayne Webb*, No. E2010-02204-CCA-R3-CD (Tenn. Crim. App., Knoxville, Sept. 14, 2011) (noting that the victim's eyewitness testimony was direct evidence of defendant's participation in the offenses); *State v. Jovan Xavier Moore*, No. M2007-02515-CCA-R3-CD (Tenn. Crim. App., Nashville, Sept. 16, 2008) (noting that eyewitness testimony is direct, not circumstantial, evidence), *perm. app. denied* (Tenn. May 4, 2009).

That being said, the evidence in this case established that the defendant shared marijuana with the 13-year-old victim. The defendant then propositioned the victim, offering the victim additional marijuana if the victim would masturbate the defendant. When the victim refused and attempted to leave the defendant's motel room, the defendant verbally and physically threatened the victim. The defendant forced the victim to the bed, pulled down the victim's pants, and placed his mouth on the victim's penis, while restraining the victim to the bed with his legs and arms. The victim struggled throughout the assault, as evidenced by the bruises and scratches to the victim's chest and neck. Mr. Patel saw the victim running scared from the defendant's motel room. At the defendant's arrest later that night, officers discovered a marijuana remnant on the night stand. In our view, the State presented sufficient evidence in support of the defendant's convictions.

*Impeachment by Prior Convictions*

Next, the defendant argues that the trial court erroneously allowed the State to use as impeachment his convictions of aggravated assault and statutory rape. He contends that the court's ruling prevented him from testifying at trial. The State argues that the trial court did not abuse its discretion by allowing impeachment by these prior convictions. Alternatively, the State contends that any error in their admission was harmless.

Subject to certain conditions for admissibility, Tennessee Rule of Evidence 609 authorizes the use of proof of a witness's prior convictions to attack a witness's credibility. Tenn. R. Evid. 609(a). The prior conviction must be for a felony or a crime involving dishonesty or false statement. Tenn. R. Evid. 609(a)(2). To be eligible as an impeaching conviction, a prior felony conviction need not involve dishonesty. However, when the witness to be impeached is the criminal defendant, the State must give notice prior to trial of its intent to utilize the conviction for impeachment purposes, Tenn. R. Evid. 609(a)(3), and upon request, the court must determine the admissibility of an eligible conviction by deciding whether "the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues." *Id*. In making this determination, "two criteria are especially relevant." *State v. Mixon*, 983 S.W.2d 661, 674 (Tenn. 1999). First, the court must "analyze the relevance the impeaching conviction has to the issue of credibility" and "explain [the relevance] on the record," *id*., and second, it must, "'assess the similarity between the crime on trial and the crime underlying the impeaching conviction.'" *Id*.

(quoting Cohen, Sheppeard, Paine, *Tennessee Law of Evidence* § 609.9 at 376 (3d ed. 1995)).

If the conviction is remote, that is, if more than 10 years have elapsed from the date of release from confinement or from the date of conviction if no confinement was involved, the prior conviction is generally not admissible to impeach the witness. Tenn. R. Evid. 609(b). However, a remote conviction may be admissible when the adverse party gives advance notice of intent to use the conviction, and the court determines that in the interests of justice the conviction's probative value is substantially outweighed by its prejudicial effect. *Id*. "Under the evidentiary rules, the [S]tate bears a higher burden of establishing the admissibility of convictions over ten years old." *State v. Thompson*, 36 S.W.3d 102, 110 (Tenn. Crim. App. 2000) (comparing Tenn. R. Evid. 609(a)(3) (for conviction less than ten years old, probative value must outweigh unfair prejudicial effect) with Tenn. R. Evid. 609(b) (for conviction more than ten years old, probative value must substantially outweigh unfair prejudicial effect)).

On appellate review, the trial court's rulings on the admissibility of prior convictions for impeachment purposes are subject to reversal only for abuse of discretion. *See, e.g.*, *Mixon*, 983 S.W.2d at 674.

In the present case, the trial court ruled admissible two of the defendant's prior convictions: a 1990 conviction of aggravated assault and a 1990 conviction of statutory rape. For these convictions to have been admissible, the State bore the burden of demonstrating that each conviction's probative value on credibility substantially outweighed its unfair prejudicial effect on the substantive issues. *See* Tenn. R. Evid. 609(a)(3).

With respect to the defendant's conviction of aggravated assault, we note that a conviction of aggravated assault implicates a crime of violence. This court has acknowledged that convictions of violent felonies "reflect on the moral character of a witness" and, therefore, have some probative value. *State v. Blanton*, 926 S.W.2d 953, 960 (Tenn. Crim. App. 1996). Moreover, as noted by the trial court, the crimes of rape and aggravated assault are not similar so as to increase the unfair prejudicial effect of utilizing the aggravated assault conviction for impeachment. Accordingly, we conclude that the trial court did not abuse its discretion in ruling admissible the evidence of the defendant's conviction of aggravated assault for use as impeachment during the present rape trial.

Turning to the trial court's ruling admitting the defendant's 1990 conviction of statutory rape, we note, as did the trial court, that the defendant's history of convictions includes multiple statutory rape convictions as well as other sexual assaults. In deeming this single statutory rape conviction admissible, the trial court determined that excluding numerous other convictions minimized the prejudicial effect of admitting the single

-7-

conviction. The trial court further determined that statutory rape was "not identical" to the rape allegation presented in this case. We determine, however, that "[t]here is obviously a behavioral nexus between such an assault and the type of actions generally proscribed by the [rape statute]." *Thompson*, 36 S.W.3d at 112. Indeed, the only distinction between statutory rape and the facts of the present case charging forcible and nonconsensual rape of a minor hinges upon the element of the victim's consent. Under these circumstances, we cannot conclude that the probative value as to credibility of the prior statutory rape conviction substantially outweighed the prejudicial effect of its admission. Consequently, we conclude that the trial court abused its discretion by admitting the defendant's prior conviction of statutory rape as impeachment evidence.

That being said, we must now address whether the error in this case was harmless. In assessing the harmlessness of the error, we do not consider whether the defendant would have testified but for the erroneous ruling – or whether he would have declined to testify had the trial court excluded the statutory rape but correctly allowed impeachment via the aggravated assault conviction. *Thompso*n, 36 S.W.3d at 112 (citing *State v. Galmore*, 994 S.W.2d 120, 124-25 (Tenn. 1999)). Rather, our analysis is limited to whether the erroneous impeachment would have "affected the result of the trial on the merits." *Id*. (citations omitted).

In making this assessment, we are obliged to consider the "theory of the defense" in order to determine whether the erroneous impeachment would have had an impact on the result of the trial. *See Galmore*, 994 S.W.2d at 125. Although our review is hampered by the defendant's failure to include a transcript of the arguments of counsel in the record on appeal, we discern from the defendant's cross-examination of the State's witnesses that the defense theory rested upon attacking the victim's credibility so as to create reasonable doubt regarding any force utilized by the defendant or, alternatively, to show consent on the part of the victim. On cross-examination, the victim testified that although he was "high" from smoking marijuana with the defendant, he quickly sobered when the assault began. The victim also admitted that he initially did not disclose to his grandparents that he had smoked marijuana with the defendant. He did, however, tell investigators about the marijuana during his initial interview. On redirect examination, the victim reiterated that he protested the defendant's actions and that the defendant knew he did not consent to the sexual activity. In that vein, this case presents a credibility contest between the victim and the defendant – a situation that has yielded, in some prior cases before this court, a finding of harmfulness requiring reversal.

We further determine, however, that this case did not rest solely upon a credibility determination of the victim versus the defendant. The victim suffered apparent injuries to his neck and chest that were documented within hours of the assault, giving

credence to the victim's claim of force and lack of consent. Photographs of the victim's injuries were admitted into evidence and display substantial bruising and scratches across the victim's neck and upper chest. Indeed, family members' viewing the victim's injuries and distressed state within minutes of the assault prompted the victim to disclose the assault. Detective Merlo testified that he observed "fresh" scratches on the victim's neck and that the victim's injuries were consistent with the victim's account of the attack. Mr. Patel saw the victim fleeing the defendant's apartment "very scared" immediately following the assault. The victim testified that he did not ejaculate during the assault. All of this evidence negates the defendant's theory that the incident was consensual. Moreover, we note that a prior conviction of statutory rape was not necessarily inimical to the defendant's theory that the sexual contact in this case was consensual. In our view, these considerations render the trial court's admission of the statutory rape conviction harmless.

*Sentencing*

In his last issue, the defendant challenges the trial court's imposition of sentence. He contends that the record does not support the trial court's imposition of the maximum 20-year sentence for the rape conviction and that the trial court should not have ordered partial consecutive service of the sentences. The State argues that the record supports the sentencing decision in this case.

Since the passage of the 1989 Sentencing Act, our standard of review when considering challenges to the length and manner of service of a sentence has been de novo review with a presumption that the determinations of the trial court are correct. T.C.A. § 40-35-401(d) (2006) ("When reviewing sentencing issues raised pursuant to subsection (a), including the granting or denial of probation and the length of sentence, the appellate court shall conduct a de novo review on the record of the issues. The review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct."). In 2005, the general assembly amended the Sentencing Act to bring our sentencing law into compliance with federal constitutional requirements as enunciated in *Blakely v. Washington*, 542 U.S. 296 (2004), and its progeny. Notably, the 2005 revisions rendered advisory the enhancement and mitigating factors and removed the presumptive sentence to be imposed by the trial court. *State v. Carter*, 254 S.W.3d 335, 345-46 (Tenn. 2008). In a number of cases following passage of the 2005 amendments, our supreme court signaled that the statutorily proscribed standard of review, de novo with a presumption of correctness, might be at odds with what had become a far more discretionary sentencing scheme. *See, e.g.*, *Carter*, 254 S.W.3d at 344, 346. In *State v. Cross*, 362 S.W.3d 512 (Tenn. 2012), the court again wrestled with the "the precise metes and bounds of appellate review under the current increased trial court discretion structure" but ultimately left the issue unsettled. *State v. Cross*, 362 S.W.3d 512, 529 (Tenn. 2012). The court visited the issue

most recently in *State v. Susan Renee Bise*, ___ S.W.3d ___, No. E2011-00005-SC-R11-CD (Tenn. Sept. 26, 2012), and ultimately concluded that "although the statutory language continues to describe appellate review as de novo with a presumption of correctness," the 2005 revisions to the Sentencing Act "effectively abrogated the standard of appellate review." *State v. Susan Renee Bise*, ___ S.W.3d ___, No. E2011-00005-SC-R11-CD, slip op. at 29 (Tenn. Sept. 26, 2012). Observing that a change in our standard of review was necessary to comport with the holdings of the United States Supreme Court, our supreme court "adopt[ed] an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Id.* The court held that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness'" afforded to sentencing decision of the trial court.

The supreme court observed, however, that in making its sentencing decision, a trial court must consider the principles of sentencing enumerated in Code section 40-35-210(b):

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

*See Susan Renee Bise*, ___ S.W.3d ___, slip op. at 19 (citing T.C.A. § 40-35-210(b)), 27 n. 41. By statute, the trial court must also consider "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." *Id.* § 40-35-103(5). The court cautioned that, despite the wide discretion afforded the trial court under the revised Sentencing Act, trial courts are "still required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Id.* (citing Tenn. Code Ann. § 40-35-210(e)). Thus, under the holding in *Susan Renee Bise*, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.*, slip op. at 32.

At the outset, we note that the record reflects the trial court's consideration of the sentencing principles and facts and circumstances of this case. In arriving at the maximum length of sentence, the trial court considered the defendant's history of criminal convictions, history of juvenile adjudications, and his supervision status at the time the offenses were committed. *See* T.C.A. § 40-35-114(1), (16), (13). The trial court found that the 52-year-old defendant's history of criminal convictions, dating back over 30 years, alone "sufficient[ly justified] a maximum sentence." In our view, the record supports the trial court's findings. The defendant committed the present offenses while under supervision for an attempted rape conviction. His prolific record of sexual offenses includes four statutory rape offenses, a third degree sexual conduct offense, and assault with intent to molest a child less than 12 years of age. His juvenile record also reveals at least one sexual offense conviction at the age of 15. We conclude that the record supports the length of sentence imposed in this case.

As to the defendant's challenge concerning the imposition of consecutive sentences, we note that the Sixth Amendment considerations attendant to the trial court's imposition of sentence length are not implicated by the trial court's decision regarding alignment of sentences. *See Oregon v. Ice*, 555 U.S. 160, 172 (2009); *State v. Allen*, 259 S.W.3d 671, 688 (Tenn. 2008) (ruling Sixth Amendment *Blakely* challenges inapplicable to consecutive sentencing). Consequently, our standard of review when considering challenges to the alignment of sentences remains de novo with a presumption that the determinations of the trial court are correct. T.C.A. § 40-35-401(d) (2006); *see also id.* § 40-35-401(a) ("The defendant in a criminal case may appeal from the length, range or manner of service of the sentence imposed by the sentencing court. The defendant may also appeal the imposition of consecutive sentences."). When a defendant is convicted of multiple crimes, the trial court, in its discretion, may order the sentences to be served consecutively if it finds by a preponderance of the evidence that a defendant falls into one of seven categories listed

in Tennessee Code Annotated section 40-35-115. They are:

> (1) The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;

> (2) The defendant is an offender whose record of criminal activity is extensive;

> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high;

> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

> (6) The defendant is sentenced for an offense committed while on probation; or

> (7) The defendant is sentenced for criminal contempt.

T.C.A. § 40-35-115(b). The existence of a single category is sufficient to warrant the imposition of consecutive sentences. *See State v. Adams*, 973 S.W.2d 224, 231 (Tenn. Crim. App. 1997).

The trial court imposed partially consecutive sentences based upon its finding that "[t]he defendant is an offender whose record of criminal activity is extensive." *See* T.C.A. § 40-35-115(2). The trial court noted that "the defendant is a true sexual predator.

That is the longest sentence I can give, and I find that he is fully deserving of that [sentence]." The record supports the trial court's finding. The exhibits to the sentencing hearing reflect the defendant's long history of criminal convictions spanning over 40 years, beginning when the defendant was only 14 years old, many of which involved sexual offenses. We conclude that partial consecutive service was appropriate in this case.

*Conclusion*

The judgments of the trial court are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE